313 So.2d 754 (1975)
William CODIE, Petitioner,
v.
STATE of Florida, Respondent.
No. 45379.
Supreme Court of Florida.
February 26, 1975.
*755 Edward M. Kay, of Varon, Stahl & Kay, Hollywood, for petitioner.
Robert L. Shevin, Atty. Gen., Enoch J. Whitney and Gerry B. Rose, Asst. Attys. Gen., for respondent.
ADKINS, Chief Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, Fourth District, reported at 291 So.2d 686. Our jurisdiction is based on alleged conflict[1] between the decision sought to be reviewed and Kaminski v. State,[2] Palatka v. State,[3] and Lockett v. State,[4]inter alia. The petition for writ of certiorari reflected apparent jurisdiction in this Court. We issued the writ and have heard argument of the parties. Upon further consideration of the matter, we have determined that the cited decisions present no direct conflict as required by the constitution. The writ must be and hereby is discharged, for reasons which will be set out below.
The facts of the case are as follows.
On July 12, 1972, Petitioner and his friend Pedro were driving around Hallandale and picked up three black hitchhikers. They rode around "hollering at girls and smoking marijuana"; they stopped at a grocery store, an ice cream place, and finally drove to the Kentucky Fried Chicken store, which was being manned by one Walter Kent and one Michael Williams. According to Williams, the store manager, three individuals (the hitchhikers) entered the store and attempted to rob Williams, and when he resisted, one of the three said "let's get out of here because the kid is out back". The three ran out of the door with Williams chasing them. As Williams rounded the corner of the building, he pulled out a .22 caliber pistol and started to shoot at the three individuals who were fleeing toward a car parked near the rear of the building; Petitioner was seen standing by the car with the hood of it up. As the chase approached him, he ran around the car and began to get into it. Meanwhile, at the same time that Williams was chasing the three would-be robbers, the other store employee, Kent, was being robbed by a fourth individual, apparently Pedro; Kent's watch and change were taken from his pocket (at the time he was robbed, Kent was behind the Kentucky Fried Chicken store washing out garbage cans). While Kent was being robbed, he observed Petitioner standing near an automobile; *756 when Kent first saw him, both the hood and trunk of the vehicle were up and Petitioner was leaning under the hood. After Kent was robbed, the perpetrator of the robbery made him turn around, at which time Kent noticed that the trunk of the car was closed but the hood was open with Petitioner still leaning under it. While Williams chased the three hitchhikers past the car (they commandeered a vehicle belonging to another), the fourth robber jumped into the passenger side of Petitioner's automobile, and Petitioner, having jumped into the driver's side, drove off. When Petitioner's car was stopped later, the police found the proceeds that had been taken from Kent and a gun.
Petitioner was informed against for two counts of robbery. Prior to trial, a hearing was held to determine whether a lie detector test which was failed by Petitioner would be admitted into evidence. At that hearing, the following testimony was before the court: the polygraph examiner (Carl Lord) stated that he had been notified by the state attorney (Mr. Cross) that Petitioner's defense counsel (Mr. Platt) would be calling him to have his client tested regarding an armed robbery; Lord stated that he talked with Platt on the phone, that Platt came to his office, and that he fully explained his procedure, including a stipulation agreement which was generally required; Lord testified that Platt told him an agreement had been reached between him and Cross regarding this test; subsequently, Lord examined Petitioner and notified Cross that Petitioner had failed the test; Cross testified that when Platt asked him whether Petitioner could take a polygraph exam, Cross advised him that the results would have to be admitted into court regardless of whether he passed or failed the test; later Cross was informed by Platt that Petitioner had taken a polygraph examination in Fort Myers, whereupon Cross told Platt both tests could be put into evidence; Cross stated that he normally requires and receives a written stipulation to the admissibility of the polygraph results, but that he did not in this case because Mr. Platt was in Fort Myers; Cross testified that, without a doubt, there was an oral agreement; Platt, however, testified that although Cross did tell him that it was his general policy to require a stipulation, he did not feel that there was an agreement at that time. After hearing the evidence, the trial judge ruled the result of the polygraph test given by Lord, which Petitioner failed, could be admitted into evidence over Petitioner's objections. The case proceeded to trial where the jury found Petitioner guilty on both counts, and he was sentenced to a term of ten years on each count to run concurrently. On appeal, this decision was affirmed by the District Court, per curiam, without opinion.
While it is true that results of lie detector tests are inadmissible over objections,[5] the parties concede that such results are admissible upon stipulation.[6] After listening to the evidence relating to a possible agreement, the trial judge ruled at the preliminary hearing in favor of Respondent, a determination which reaches this Court with a presumption of correctness.[7]
While it is true that Rule 1.030(d), Rules of Civil Procedure, provides that in order to have any binding effect a stipulation must be in writing or must have been made in open court and incorporated into the record, we find that this procedure is incorporated in the Rules of Criminal Procedure only in connection with the procedure for stipulating a waiver of the speedy trial rule.[8] This negates the conclusion *757 that the rule generally applies to criminal cases. Furthermore, it is unacceptable to apply the civil rules strictly against the state in the case sub judice when the reverse fact situation has resulted in the enforcement of the verbal stipulation against the state in State v. Davis.[9] Since Petitioner freely and voluntarily submitted to taking the polygraph examination (indeed, it was administered at his request), we find the results to be admissible.[10]
For his second point, Petitioner claims conflict with Lockett v. State,[11] which held, inter alia, that, if proof of intent of an unlawful undertaking rests solely on circumstantial evidence, the proof must be not only consistent with the guilt of the accused, but also inconsistent with any other reasonable hypothesis. We recognize this to be a sound principle of law; however, we also note that by moving for a directed verdict at the close of the evidence for the state, Petitioner admitted the facts in evidence and every conclusion reasonably inferable therefrom.[12] Although the state's evidence was primarily circumstantial in nature, this Court has held in Victor v. State[13] that:
"... [W]hen such [circumstantial] evidence is of a conclusive nature and tendency, and is consistent with guilt and inconsistent with innocence, leading on the whole to a reasonable and moral certainty that the accused and no one else committed the offense charged, such evidence will sustain a conviction."
Our careful examination of the record, together with the petition, briefs and arguments of counsel, leads us to the conclusion that the cases cited for conflict are factually distinguishable from the case sub judice.
Accordingly, no direct conflict having been demonstrated, the writ must be and hereby is discharged.
It is so ordered.
ROBERTS, McCAIN, OVERTON and ENGLAND, JJ., concur.
NOTES
[1] Article V, Section 3(b)(3), Florida Constitution; Foley v. Weaver Drugs, Inc., 177 So.2d 221 (Fla. 1965).
[2] 63 So.2d 339 (Fla. 1932).
[3] 23 Fla. 546, 3 So. 158 (1887).
[4] 262 So.2d 253 (Fla.App. 1972).
[5] Kaminski v. State, supra, see Note 2, at p. 340.
[6] State v. Brown, 177 So.2d 532 (Fla.App. 1965).
[7] Loos v. Scarfone, 46 So.2d 395 (Fla. 1950).
[8] Rule 3.191(d)(2)(i), Rules of Criminal Procedure.
[9] 188 So.2d 24 (Fla.App. 1966).
[10] Roberts v. State, 195 So.2d 257, 258 (Fla.App. 1967).
[11] See Note 4, supra.
[12] Cutchins v. Seaboard Air Line R. Co., 101 So.2d 857 (Fla. 1958).
[13] 141 Fla. 508, 193 So. 762, 763 (1939).